UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MELVIN BRUCE, JR.**                                                   **CIVIL ACTION**

**VERSUS**

**NO. 16-168-JWD-RLB**

**BAYWATER DRILLING, L.L.C.**

## ORDER

Before the Court is Baywater Drilling, LLC's ("Defendant") Motion to Compel Rule 35 Physical Examination and for Sanctions (R. Doc. 10) and Motion for Expedited Hearing (R. Doc. 11), both filed on April 28, 2016. Melvin Bruce, Jr. ("Plaintiff") has filed an Opposition to the Motion to Compel. (R. Doc. 14).

**I.      Background**

Plaintiff brought this action under the Jones Act, 46 U.S.C. § 30104, alleging that he was injured while working as a derrickman on the Blue Bayou, a vessel owned, operated, and maintained by Defendant. (R. Doc. 1). Plaintiff alleges that on August 19, 2015 he "sustained serious and painful personal injuries while using a harness which was not suitable for plaintiff's work as a derrickman." (R. Doc. 1 at 2).

On August 20, 2015, the day after the alleged accident, Plaintiff saw John Baskett, FNP-C, of the All Industrial Medical Clinic, who diagnosed Plaintiff with "Lumbar Lower Back Strain" and released him to full duty. (R. Doc. 10-3).

On August 28, 2015, Plaintiff sought treatment from Dr. Robert Smith of Home Town Doctors in Alexandria, Louisiana, and obtained x-rays and an MRI of the lumbar spine. (R. Doc. 14-1 at 4). On September 2, 2015, Dr. Smith diagnosed Plaintiff with, among other things, minimal stenosis at L4-5 and multilevel facet arthropathy. (R. Doc 14-1 at 5-7).

On September 9, 2015, at the request of Defendant, Plaintiff went to Houma Orthopedic Clinic and reported that his lower back pain had not improved. (R. Doc. 10-3 at 2). Dr. Michael LaSalle diagnosed Plaintiff with a "Lumbosacral sprain" and recommended a modified duty status with no lifting over 50 pounds. (R. Doc. 10-3 at 2-3). Dr. LaSalle scheduled a follow-up visit with Plaintiff in one month. (R. Doc. 10-3 at 7). Defendants assert that Plaintiff did not return to see Dr. LaSalle. (R. Doc. 10-1 at 2).

On January 28, 2016, February 18, 2016, and March 9, 2016, Plaintiff returned to Dr. Smith, who recommended that he undergo a rhizotomy in light of his chronic back pain. (R. Doc. 10-3 at 8-13).

Prior to filing this lawsuit, Plaintiff requested that his employer authorize and pay for the rhizotomy. Defendant arranged for Plaintiff to be evaluated by Dr. Andrew Todd, an orthopedic surgeon at Southern Orthopedic Specialists, on April 8, 2016. (R. Doc. 10-1 at 3).

On March 11, 2016, Plaintiff filed his Complaint. (R. Doc. 1).

On April 1, 2016, defense counsel contacted Plaintiff's counsel to confirm the April 8, 2016 evaluation with Dr. Todd. (R. Doc. 10-3 at 14). Plaintiff's counsel responded that Plaintiff would attend the evaluation so long as it was scheduled as an independent medical exam ("IME") within the context of this lawsuit. (R. Doc. 10-3 at 15-16).[1]

On April 5, 2016, Plaintiff's counsel informed defense counsel that Plaintiff would not attend the evaluation with Dr. Todd because he had not received a designation of the appointment as an IME. Defense counsel agreed to postpone the evaluation by Dr. Todd because he had not yet obtained all of Plaintiff's radiologic studies. (R. Doc. 10-3 at 17).

---

[1] Plaintiff's counsel used the term "second medical opinion" or "SMO."

2

Defense counsel then scheduled Plaintiff to see Dr. Henry Eiserloh, an orthopedic surgeon at the Baton Rouge Orthopedic Clinic, on April 26, 2016. (R. Doc. 10-1 at 3-4). Defense counsel confirmed that the evaluation was "requested in the context of the litigation." (R. Doc. 10-3 at 21). Defense counsel also informed Plaintiff's counsel that he had "no plans for additional medical evaluations" unless Plaintiff's circumstances change. (R. Doc. 10-3 at 19).

On April 22, 2016, Plaintiff's counsel denied defense counsel's request for an examination by Dr. Eiserloh because Plaintiff had already seen Dr. LaSalle at the request of Defendant. (R. Doc. 10-3 at 23). In response, defense counsel provided several reasons why Defendant was entitled to an evaluation by Dr. Eiserloh and suggested he would seek an order compelling the evaluation. (R. Doc. 10-3 at 23). Plaintiff's counsel again refused an evaluation to proceed by Dr. Eiserloh, but suggested that another evaluation by Dr. LaSalle would be agreeable. (R. Doc. 10-3 at 22).

On April 28, 2016, Defendant filed its Motion to Compel Rule 35 Physical Examination and Motion for Sanctions for "attorneys' fees and costs filing the motion as well as the costs of the late cancellation of the appointment." (R. Doc. 10-1 at 9).

On May 12, 2016, the parties submitted a joint status report with proposed pre-trial deadlines. The Court subsequently cancelled the scheduling conference set for May 26, 2016 (R. Doc. 5), and issued a Scheduling Order setting the deadline to complete non-expert discovery on September 23, 2016. (R. Doc. 15).

II.   Law and Analysis

   A.   Timing of the Motion

As an initial issue, the instant Motion appears to have been filed prior to the commencement of discovery in this action. Generally, "[a] party may not seek discovery from

any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). Unless otherwise ordered by the Court, Rule 26(f) requires the parties to confer "at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f)(1). There is no indication in the record that the parties held a Rule 26(f) conference prior to the filing of the instant motion. That said, Plaintiff filed his opposition after the submission of the joint status report and discovery has commenced in this action. Accordingly, the Court will consider the Motion on the merits.

**B.     Request for Rule 37 Order and Sanctions**

Defendant's motion is presented as a "motion to compel" and is accompanied by a Rule 37(a)(1) certificate (R. Doc. 10-2). Rule 37(a) authorizes the filing of motions to compel disclosures pursuant to Rule 26(a) and responses to discovery requests made pursuant to Rules 30, 31, 33, 34. *See* Fed. R. Civ. P. 37(a)(3). Rule 37 does not provide a mechanism for a party to move to compel a Rule 35 examination. The type of discovery allowed by Rule 35—a physical or mental examination—is only enforceable through Rule 37 after the Court issues an order for examination pursuant to Rule 35. Once a Rule 35 order is issued, a party may seek sanctions pursuant to Rule 37 if the opposing party disobeys the Rule 35 order. *See* Fed. R. Civ. P. 37(b)(2)(A)-(B).

Based on the foregoing, the Court will deny Defendant's motion to the extent it seeks any relief, including sanctions, pursuant to Rule 37. Since the filing of this lawsuit, the Court has not issued any orders requiring Plaintiff to submit to an examination pursuant to Rule 35. Accordingly, any cancellation fees incurred by Defendant and/or its counsel regarding the scheduled medical examination with Dr. Eiserloh are not awardable pursuant to Rule 37.

### C. Request for Rule 35 Order and Sanctions

Rule 35 provides that the "court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order may be issued "only on motion for good cause and on notice to all parties and the person to be examined" and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Schlagenhauf v. Holder,* 379 U.S. 104, 118 (1964). Rule 35 does not limit the number of independent medical examinations so long as "good cause" is shown for each exam. *Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D. La. 2009). "Examples of circumstances which have been held sufficient to justify second examinations include: (a) separate injuries calling for examination by distinct medical specialties; (b) where a physician requires assistance of other consultants before he can render a diagnosis; (c) where the first examination was not adequate or complete; and (d) where a substantial time lag occurred between the initial examination and the trial." *Moore v. Calavar Corp.*, 142 F.R.D. 134, 135 (W.D. La. 1992) (citing cases).

Plaintiff is suing Defendant for "serious and personal painful injuries while using a harness which was not suitable for plaintiff's work as a derrickman." (R. Doc. 1 at 2). There is no dispute that Plaintiff's physical condition is in controversy. The sole dispute is whether Defendant has demonstrated good cause for a Rule 35 examination given Plaintiff's medical history and pre-litigation examination by Dr. LaSalle.

5

In the context of Rule 35, good cause "requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere." *Miller v. Credit*, No. 12-00138, 2013 WL 375551, at *2 (M.D. La. Jan. 30, 2013) (citing *Schlagenhauf*, 379 U.S. at 118).  Defendant contends that it "clearly has good cause for a physical examination to determine the existence and extent of plaintiff's claimed injuries and, more significantly, to determine whether the recommended back surgery—for which plaintiff wants defendant to pay—is necessary." (R. Doc. 10-1 at 6).

In opposition, Plaintiff contends that Defendant has not demonstrated "good cause" for the examination by Dr. Eiserloh because Defendant "is not only seeking a second evaluation, but it is seeking a second evaluation by a second orthopedic physician." (R. Doc. 14 at 2-3). Plaintiff argues that he has already voluntarily submitted to an examination by Dr. LaSalle, an orthopedic physician selected by the Defendant.  Plaintiff further argues that the proposed "second" evaluation is unlike any of the four illustrative examples in the *Moore* decision meriting a second Rule 35 examination. (R. Doc. 14 at 3-4).  Defendant contends that even if the proposed Rule 35 examination by Dr. Eiserloh is considered a second examination, the "good cause" requirement is met because there has been a significant change in Plaintiff's condition since his visit with Dr. LaSalle. (R. Doc 10-1 at 7).

The Court does not accept Plaintiff's position that, for the purposes of Rule 35, the proposed examination by Dr. Eiserloh is a "second" examination.  Before the institution of this action, Plaintiff consented to medical exams requested by Defendant (presumably for the purposes of workers' compensation) and went to various doctors on his own to determine the full extent of the injuries sustained on August 19, 2015. (R. Docs. 1, 10-3, 14-1).  None of these

exams were conducted under Rule 35 and the instant motion is the first request for an order authorizing a medical examination pursuant to Rule 35.

Given Plaintiff's medical history and the specific circumstances of this case, the Court finds good cause for authorizing a medical examination of Plaintiff by Dr. Eiserloh. Since being diagnosed with a "Lumbosacral Sprain" by Dr. LaSalle prior to this litigation, Plaintiff has complained of chronic pain in the lower back and has been recommended for a rhizotomy by his treating physician.[2]

There is also no dispute that Dr. Eiserloh, a board certified orthopedic surgeon, is "a suitably licensed or certified examiner" under Rule 35(a)(1).

Having determined that there is good cause for ordering a medical examination by Dr. Eiserloh, the Court will consider whether to award sanctions. As discussed above, Rule 37 does not provide a mechanism for sanctions prior to the issuance of a Rule 35 order. Similarly, Rule 35 does not provide a mechanism for recovery of costs when a medical examination is opposed but clearly warranted. *See Barcia v. ENI US Operating, Co.*, No. 05-4501, 2006 WL 1236053, at *3 (E.D. La. May 4, 2006). Accordingly, any award of costs with regard to the instant motion "would necessarily come from the Court's inherent power to sanction." *Id*. (declining to award sanctions where party opposed Rule 35 exam); *but see Smith v. Diamond Offshore Co.,* No. 07-3954, 2009 WL 1107717, at *4 (E.D. La. April 22, 2009) (awarding attorney's fees and costs where party opposed Rule 35 exam). Considering the record, the Court concludes that an award of sanctions is unwarranted in this case.

---

[2] The briefing by the parties both reference recommended back surgery, but are not clear as to whether this is a surgical recommendation beyond the rhizotomy procedure discussed above. (R. Doc. 10-1 at 8; R. Doc. 14 at 4).

7

### III.     Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Rule 35 Physical Examination and for Sanctions (R. Doc. 10) is **GRANTED IN PART and DENIED IN PART**.  Plaintiff is ordered to appear in Baton Rouge, Louisiana for a medical examination with Dr. Henry Eiserloh, a board certified orthopedic surgeon at the Baton Rouge Orthopedic Clinic, at a time to be agreed upon by the parties prior to the close of non-expert discovery.  The examination may include obtaining medical history, an interview, a physical examination, x-rays, and any other appropriate testing.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs regarding the instant motion.

**IT IS FUTHER ORDERED** that Defendant's *Ex Parte* Motion for Expedited Hearing (R. Doc. 11) is **DENIED as moot**.

Signed in Baton Rouge, Louisiana, on June 3, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**